**Jerry Denzil DAVIDSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 8758.**

United States Court of Appeals
Tenth Circuit.

Aug. 23, 1966.

Rehearing Denied Dec. 20, 1966.

Peter L. Garrett, Denver, Colo., for appellant.

Bruce Green, U. S. Atty., for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant was convicted by a jury of the offense of entering, on or about December 13, 1960, the Bank of Red Oak, Red Oak, Oklahoma, with the intent to commit a larceny therein, violative of 18 U.S.C. 2113(a). This is a direct appeal from that conviction.

The only ground upon which the conviction is attacked is that appellant's confession of the crime charged should have been suppressed by the trial court for the reason that the defendant was denied the effective assistance of counsel at the time the confession was taken, in violation of Amendment VI to the United States Constitution.

The Red Oak Bank,[1] at Red Oak, Oklahoma, was burglarized on December 13, 1960. The facts surrounding and evidence of the burglary are immaterial to this appeal since appellant alleges error only as to the admission into evidence of his confession to the crime. Four and one-half years after the crime occurred, appellant was incarcerated in the Sebastian County Jail in Fort Smith, Arkansas, awaiting trial there on state charges. For reasons known to the appellant only, he decided to confess that he had participated in the Red Oak Bank burglary. On July 21, 1965, while he was in jail at Fort Smith, he called Special Agent Stewart of the F.B.I. in Oklahoma City and asked Stewart to come to Fort Smith to talk with him. Appellant had been a suspect in the Red Oak Bank burglary and had been questioned by federal agents on December 14, 1960, the day after it occurred and had also been asked about it on a few other occasions prior to July 27, 1965, while appellant was in federal custody serving sentences on other crimes. On July 27 Agent Stewart went to Fort Smith accom-

1. The Red Oak Bank is insured by the Federal Deposit Insurance Corporation.

panied by F.B.I. Special Agent Patrakis. In the trial court the agents testified that when they first saw Davidson on July 27, Agent Stewart advised him that he was not required to make any statements; that if he did make any statements they could be used against him on a trial for the offense; that he had a right to counsel and that if he was without funds the government would furnish him counsel. Appellant, at this time, had counsel in Fort Smith retained on the local charges. Prior to the trial, a hearing was held on appellant's motion to suppress. Appellant testified that he was told by Agent Stewart that he could not have counsel. However, Agents Stewart and Patrakis both testified that appellant, after being advised of his rights, did not request counsel.

On this first day, the 27th, appellant told the agents about the bank robbery, but did not want to sign a statement. He said he wanted to think it over and asked Agent Stewart to return the next day. On the following day, the 28th of July, 1965, Agent Stewart again visited appellant in the County Jail. This time Agent Stewart was accompanied by Lyle Smith, an agent of the Oklahoma Bureau of Investigation. Mr. Smith and Agent Stewart both testified that on the 28th appellant was again advised of all his Constitutional rights. Appellant then repeated his story and it was reduced to writing by Agent Stewart in his own hand and Davidson then signed this statement. In this writing appellant acknowledged he had been apprised of his rights.[2] Also at the hearing on appellant's motion to suppress he admitted reading and understanding this acknowledgment.[3] The trial judge overruled the motion to suppress and at the trial, over objections by Davidson's attorney, permitted the confession to go to the jury. Although the trial court did not make formal findings of fact on the motion to suppress, its ruling infers a finding that the confession was voluntarily made and was without threats, promises or coercion.

Appellant relies on Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; and United States ex rel. Russo v. State of New Jersey, 3 Cir., 351 F.2d 429. These cases are simply not in point here because in each of them the accused was actively sought out, placed in custody and interrogated by the police as to the crime to which he confessed.

■ The facts surrounding this confession clearly do not show a custodial interrogation. Davidson was in custody of the state officials for a state offense and was not being held as a suspect in the crime to which he confessed. He was not sought out by the F.B.I. agents for interrogation nor held by them as a

2. The acknowledgment read as follows:
"I Jerry Davidson, make the following free and voluntary statement to George H. Stewart, whom I know to be a Special Agent of the F.B.I. No threats or promises have been made to me to make a statement. I know I am not required to make a statement and anything I do say can be used against me in a court of law. I have been advised of my right to consult an attorney or anyone else before making a statement. I have been told that if I cannot afford a lawyer the court will get one for me."

3. The record transcribed at that hearing reveals the following colloquy between appellant and the Government's counsel:
"Q. Did you then make a statement?
A. Yes sir.

Q. Did you read the statement before you signed it?
A. Yes sir, I am sure that I did.
Q. Did you understand it?
A. If I read it, I am sure I did understand it.
Q. In other words, you wouldn't have signed it, if you hadn't read that statement and understood everything that it said?
A. Yes sir.
Q. And you agreed with that statement?
A. Well, I signed it.
Q. Well then, I must assume that you agreed with it.
A. Yes sir.
Q. Is that correct?
A. Yes sir."

suspect. To the contrary, he sought out the F.B.I. agents for the express purpose of confessing his part in the bank burglary. The confession here is not only a voluntary one but it is a volunteered confession made without solicitation or interrogation by the officers. Actually, appellant stands in the same position as the man who walks into the police station and confesses a crime. In Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, Chief Justice Warren commented, "There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime,[47] or a person

"[47]. People v. Dorado, 62 Cal.2d 338, 354, 42 Cal.Rptr. 169, 179, 398 P.2d 361, 371 (1965).

who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." That statement by the Chief Justice imports to us that protections afforded under both the Fifth and Sixth Amendments are not to be applied in cases involving volunteered confessions. No cases have been cited to us, nor do we know of any cases in which a court has applied the Constitutional right to counsel to circumstances showing a volunteered statement or confession.

Because we consider this confession to be a volunteered one, we do not believe that the Constitutional right to counsel attached at any time during the interviews between the officers and appellant on July 27 and 28. Even though it may be concluded, for the sake of argument, that such right was present, appellant can receive little solace from such a concession because the record reveals a voluntary confession freely and understandingly made with the right to counsel being waived. The trial court, in effect so held, and such a holding is amply supported by the testimony of the interviewing officers and in some respects by appellant's own testimony.

Affirmed.